UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLAIBORNE PARISH HOSPITAL SERVICE DISTRICT NO. 3 | CIVIL ACTION NO. 21-cv-759 |
| VERSUS | MAGISTRATE JUDGE HORNSBY |
| FIREMANS FUND INSURANCE CO | |

## MEMORANDUM RULING

### Introduction

Claiborne Memorial Medical Center ("Plaintiff") is a hospital in Homer, Louisiana. It filed a claim against its all-risk insurer, Fireman's Fund Insurance Company ("FFIC"), seeking coverage for the replacement of the hospital's roof that was allegedly damaged by hail in the spring of 2020. FFIC denied the claim and has argued that (1) Plaintiff cannot establish that hail damaged the roof during the effective term of the policy and (2) a wear and tear exclusion is applicable. Plaintiff retained Matthew Varnell to offer opinion testimony regarding the cause of damage to the roof. Before the court is **FFIC's Motion in Limine (Doc. 17)** that seeks to exclude Mr. Varnell's testimony based on Daubert principles. For the reasons that follow, the motion is **denied**.

### FRE 702 and Daubert

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if his specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue, the testimony is based on sufficient facts or data, the testimony is the product

of reliable principles and methods, and the witness has reliably applied the principles and methods to the facts of the case.  FFIC argues that Mr. Varnell is not qualified to offer opinion testimony under this rule.

The landmark Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993) focused on the admissibility of scientific expert testimony.  It discussed certain factors such as testing, peer review, error rates, and acceptability in the relevant scientific community as factors that might prove helpful in determining the reliability of a particular scientific theory or technique.

The Court clarified in Kumho Tire Co., Ltd. v. Charmichael, 119 S.Ct. 1167 (1999) that Daubert's general holding applies not only to testimony based on "scientific" knowledge, but also to testimony based on technical and other specialized knowledge contemplated by Rule 702.  Kumho explained that one or more of the scientific factors from Daubert might be helpful in determining the reliability of such a witness, but the test for reliability is flexible.  The law grants the trial judge the same broad latitude in deciding how to determine reliability as is afforded with respect to the ultimate reliability determination.

**Relevant Facts**

Mr. Varnell earned a bachelor's degree in history and English from Louisiana Tech University in 2007.  He sold cars and served in the Marine Corps Reserve for a time and eventually began to work for Foster-Somerled, a construction company owned by friends.  His work there was primarily scheduling and administrative duties related to residential roof replacements.

Mr. Varnell and a partner formed Bayou State Construction Group, LLC in about 2014.  His "silent partner" holds the certification for the "construction side for the commercial" work, and Varnell earned the business and law certifications for the commercial license.  Mr. Varnell said he also holds a home remodeler's license, and he took prep courses, which included reading about a dozen books, for the construction side of the commercial license.

Mr. Varnell stated that there is "a huge difference between a commercial roofer and a residential roofer," and he explained the basis for his knowledge in commercial roofing.  It included watching videos, reading a construction publication by an architect, spending countless hours on online forums devoted to roofing, and learning from experienced roofers.  He explained that some European countries have formal education programs for roofing, but there is no similar schooling in America.  Instead, he learned by working with and listening to those with experience.  Varnell said that he went on several jobs with a sheet metal worker who makes the flashings and other metal fixtures associated with roofs, and the man would tell him what to do and point out examples of what not to do.  Varnell said he spent hundreds of hours with a former subcontractor gaining information from him on roofing projects.

Mr. Varnell earned certifications from Certainteed, GAF, Atlas Residential, and Malarkey Residential, which are all manufacturers of roofing materials.  The certifications allow Mr. Varnell to sell those companies' products under warranty.  None of the products in which Mr. Varnell earned certifications included EPDM roofing, which is a large part

of what was on the hospital, and Varnell has never installed an EPDM roof. He explained that the material is not popular in the south, and he does not recommend it to customers.

Mr. Varnell's company performed solely residential work until he started doing some commercial work in about 2018. A huge hailstorm hit Louisiana in 2020, and the company's work was 95% residential afterward. It started doing "a whole lot more commercial" after that. By the time of his deposition in 2022, Mr. Varnell said the work was 50/50 commercial and residential. He then had five commercial projects underway: a nursing home, two buildings in downtown Shreveport, a church, and a credit union. Varnell said that he "always did management" as opposed to hands-on roofing work. His company has subcontractors that perform the actual roofing labor.

Mr. Varnell personally inspected the hospital's roof in June 2020. He walked the roof and took numerous pictures. He explained that there are five types of flat roof materials, and the hospital's roof was a mix of all different types. He said he visited the roof about six times. He only entered the lobby of the interior of the building, and he explained that Covid restrictions prevented further exploration. Mr. Varnell told the hospital administrator that he observed hail damage and a weakened roof that should be replaced. His company was not selected for the replacement work, but the hospital did later retain him as an expert/opinion witness in this case.

Mr. Varnell testified that when he worked with his prior employer, "We did a bunch of hail damage back in 2012, 2013." That included several churches and flat roofs, and he was involved in the initial inspection of those roofs. He explained the process for examination, which began with examination of metal and looking for any dents that were

rounded as opposed to sharp (which would indicate damage from a tool or other source). Examination would include placing a finger in the dent to check for smoothness. Chalk would be used to mark an area, which would reveal potential hail indentions because the divots will not be marked by the chalk. Mr. Varnell said that he cannot stand to touch chalk, so he had a helper do the actual chalking on the hospital roof. There was an indication that the chalk ran low by the end of the examination, and Varnell conceded that he would like to go back with more chalk for a more thorough examination.

    Mr. Varnell said that he had "done hundreds of inspections on flat roofs" and that he usually looked for a "bruised apple" effect as an indicator of hail. But for an EPDM roof, it would split or crack where damaged. He said that he had read several studies regarding the size of hail and its relationship to roof damage. He said it is "kind of a debated topic" on which many disagree. He argued that the size of hail alone was not sufficient to determine whether a roof would be damaged, and factors such as wind, clumping, and the condition of the roof must also be considered. He noted that hail may be smooth like pebbles from a river, or it may be jagged and potentially cause more damage. Mr. Varnell conceded that he did not check any nearby buildings or other sources for evidence of hail; he only checked the main roof of the hospital. He said he checked a weather report from the National Oceanic and Atmospheric Association that indicated 0.5-inch hail fell in the area of the hospital on April 24, 2020, which was shortly before the hospital experienced greater roof leaking and requested his inspection.

    Mr. Varnell issued a one-page roof inspection report that was accompanied by dozens of photographs. He concluded that hail was "present on accessories and on

roofing." He stated that water leaks were present throughout the building, and breaks in the roof coating had allowed water to enter the underlying foam and caused it to deteriorate. He stated that he was "certain hail has occurred here" based on hail damage to the field of the roof and peripheral evidence. He stated that repair was not possible, and a full roof replacement with a different sort of material was recommended. He later issued a second roof inspection report dated February 13, 2022 that took into consideration his original findings and considered a report by Mr. Perry, who was retained by FFIC. He responded to Mr. Perry's report by pointing out that they both found indications of hail indentations, arguing with some of Perry's conclusions, and standing by his opinion: "This roof experienced hail April of 2020."

**Analysis**

FFIC argues that Mr. Varnell has no training in EPDM roofing and has never installed an EPDM roof. It notes his lack of a personal license in commercial construction, and it faults his lack of thorough examination inside the building to determine the causes of various leaks. FFIC noted that Mr. Varnell downplayed the size of hail alone as an indicator of roof damage; it refers to a study that found EPDM could resist 3-inch hail impacts. FFIC also notes that Mr. Varnell's report referred to an NOAA report that indicated half-inch hail less than a quarter mile from the hospital, but the report Varnell attached to his report was actually from Lake Charles. Mr. Varnell admitted the mistake in his deposition and said he would update the information. He later attached to an affidavit a report from the NOAA based on Shreveport radar.

A witness who offers opinion testimony under Rule 702 need not hold a Ph.D. in the subject matter nor be able to cite scientific publications to support his opinion. For example, a state trooper who investigated an auto accident was allowed to offer opinion testimony regarding causation. Puga, 914 F.3d at 985-87. The undersigned also denied a motion in limine that sought to exclude the opinion testimony of a man who had great knowledge about tractors from practical experience working with the equipment. B&P Enterprises of Avoyelles Parish, LLC v. Mahindra USA, Inc., 2019 WL 1193428 (W.D. La. 2019).

Plaintiff notes that FFIC does not cite any decisions that have excluded the testimony of an expert in a similar setting, but in Grand Reserve of Columbus, LLC v. Property-Owners Insurance Co., 721 Fed. Appx. 886 (11th Cir. 2018) the court said there was "no question" that a man with 26 years of field experience who had examined over a thousand roofs was qualified to testify whether hail was the cause of roof damage. See also Bellina v. Liberty Mutual, 2021 WL 1295018 (E.D. La. 2021) (denying motion in limine that attacked roof/hail opinion testimony from the owner of a construction company who testified that he had inspected thousands of roofs during his career).

A similar argument was presented in Kim v. Nationwide Mut. Ins. Co., 2022 WL 2670393, *6 (N.D. Tex. 2022), which denied a challenge to the testimony of a roof expert who personally inspected the property, explained his methodology to distinguish hail damage from other causes of damage, and reviewed weather reports. The Kim decision cited a number of similar decisions from district courts in Texas and Louisiana that have found similar expert offerings in hail damages cases to be sufficiently qualified, relevant,

and reliable to be admitted in evidence. The court also held that the witness's testimony was admissible even if the witness could not rule out that some damage was caused by other storms or segregate the damage from other causes; the testimony would still assist the jury in determining whether an April 2020 storm caused hail damage to the roof.

Mr. Varnell has demonstrated that he has a great deal of experience inspecting roofs, and flat roofs in particular, for hail damage. He may not have experience installing an EPDM roof, but he is not being offered as an expert in that subject. He is being offered to testify regarding whether the hospital's roof, which he says consisted of multiple kinds of roofing material, was damaged by hail and whether it could be repaired or had to be replaced. Mr. Varnell testified that he has read extensively about competing theories regarding hail damage to roofs, he has accompanied and learned from experienced roofers and a sheet metal worker on multiple jobs, and he has significant practical experience in inspecting a variety of roofs for hail damage. He explained his process for distinguishing hail damage from damages from other causes, and he applied that process during personal inspections of the roof. He also referred to weather reports that indicated hail fell in the area during the relevant time. Plaintiff has demonstrated that Mr. Varnell is sufficiently qualified to testify about hail damage to the roof, and his testimony is relevant and reliable enough to be admissible. For these reasons, FFIC's motion in limine (Doc. 17) is denied. The insurer will be allowed to challenge the witness's credentials and methodology at trial through cross-examination and by offering competing opinion testimony.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 2nd day of August, 2022.

Mark L. Hornsby
U.S. Magistrate Judge